336 F.2d 723
 INTERNATIONAL MANUFACTURING CO., Inc., a corporation, and Rodolfo Jacuzzi, an individual, Appellants,
v.
LANDON, INC., a corporation, Appellee.
JACUZZI BROS., a corporation, Appellant,
v.
LANDON, INC., a corporation, Appellee.
 No. 18698.
 No. 18725.
 United States Court of Appeals Ninth Circuit.
 August 31, 1964.
 
 Frank A. Neal, James M. Naylor, Naylor & Neal, San Francisco, Cal., for appellants.
 Jack E. Hursh, Oscar A. Mellin, Mellin, Hanscom & Hursh, San Francisco, Cal., Carl Anderson, Anderson & McMillan, Burlingame, Cal., for appellee.
 Before HAMLEY, HAMLIN and MERRILL, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 These two cases involve the validity, infringement and misuse of patents covering devices for skimming and filtering the water in swimming pools and vacuuming the sides and bottom of said pools. The letters patent in question are No. 2,826,307, granted to Robert M. Pace (Pace patent) and No. 2,844,255, granted to David K. Cavenah and Paul J. Steffan (Cavenah patent), both of which have been assigned to Landon, Inc. (Landon).
 
 
 2
 In the first case Landon sued International Manufacturing Co., Inc. (International) and Rodolfo Jacuzzi (Rodolfo), who is the sole stockholder, president and alleged alter ego of International. Landon claimed that International and Rodolfo have infringed the Pace and Cavenah patents. International and Rodolfo in general denied Landon's allegations and asserted a number of defenses. Additionally, by way of counterclaim, they sought damages and injunctive relief against Landon under the antitrust laws, charging patent misuse.
 
 
 3
 In the second suit, which was brought against Landon by Jacuzzi Bros., a corporation, the latter alleged that Landon had charged it with infringement of the Pace and Cavenah patents and asked for a judicial declaration that these patents are invalid and void and that they have not been infringed by Jacuzzi Bros. This plaintiff also sought damages and injunctive relief against Landon under the antitrust laws on the same grounds as were asserted by International and Rodolfo in the first suit. Landon, by way of counterclaim, sought damages and injunctive relief against Jacuzzi Bros. for infringement of the Pace and Cavenah patents.
 
 
 4
 The two suits were consolidated for trial on the common issue of validity. On the issue of infringement and misuse the two cases were tried separately. In each case a judgment was entered adjudging that the patents are valid and have been wilfully infringed, rejecting the claim of patent misuse, awarding damages for infringement, the amount to be determined in a subsequent proceeding, and enjoining further infringement.
 
 
 5
 International and Rodolfo appeal from the judgment in the first case and Jacuzzi Bros. appeals from a judgment in the suit which it had brought. We have jurisdiction under 28 U.S.C. § 1292(4) (1958). The cases have been consolidated for purposes of the appeal.
 
 
 Validity of the Patents
 
 
 6
 The Pace patent is entitled "Fluid Recirculation Systems." It was applied for on August 22, 1955, and granted on March 11, 1958. The invention is for a fluid recirculation system especially adapted for use in swimming pools, having a filter which can be cleaned without backwashing and with provision for recirculation of overflow and surface skimming of the pool.
 
 
 7
 The construction of the Pace filter includes a filter housing or tank approximately fourteen inches in diameter by thirty-six inches high. This housing is adapted to be mounted adjacent to a swimming pool with its upper end above the normal water level of the pool, flush with the pool deck and with its lower end below the water level of the pool. The housing has a horizontally projecting neck constituting a water passage between the interior of the housing and the pool. A buoyant weir is placed in this neck and water passage to perform a skimming function on water coming into the filter housing from the pool.
 
 
 8
 A removable filter element assembly is placed in the housing below the water level of the pool. Between the top of the filter element assembly and the neck of the tank is a screen leaf basket to catch leaves and floating debris. In operation, the surface water of the pool flows from the pool over the buoyant weir to and through the leaf basket and the filter element for filtering. The filtered water then passes to an outlet in the housing directed to the suction intake of a pump which draws the filtered water through the outlet and pumps it back to the pool.
 
 
 9
 The Cavenah patent is entitled "Combination Filter and Surface Skimmer." It was applied for on April 6, 1956, and granted on July 22, 1958. The device of this patent embodies the basic combination of the Pace patent but, in addition, adds additional structure and function which makes it possible to vacuum the pool.
 
 
 10
 The added structure includes an interior circumscribing shoulder or seat in the housing between the inlet neck and the top of the filter element assembly. A removable shut-off vacuum lid is provided to be removably seated on this shoulder to effect a vacuum pull from the pump through the filter element assembly and a vacuum outlet to the pool. The Cavenah device skims and completely filters the water and also permits the device to be used as a vacuuming device to vacuum the bottom and sides of the pool.
 
 
 11
 The two principal features of the Pace and Cavenah devices are the skimming and filtering elements. Both of these elements and the other mechanisms and parts incorporated into these devices are old in the art. The trial court found and concluded, however, that the combination of old elements specified in the Pace and Cavenah patents have a mode of operation which is new in the art. This new mode of operation, the court found and concluded, produces new, different and additional results, and accomplishes the old ultimate result of pool filtering in a more facile, economical and efficient way.
 
 
 12
 Such combination, the court determined, was not obvious to persons having ordinary skill in the art at the time the invention was made. The court also found and concluded that the patents had not been anticipated by the cited prior art, that Cavenah had not been anticipated by Pace, and that both involved invention. On the basis of these determinations the trial court held that the Pace and Cavenah patents were valid.
 
 
 13
 Challenging this determination, appellants focus attention upon the standard of invention incorporated in 35 U.S.C. § 103. Under that section the Pace and Cavenah patents should not have been issued if the differences between the unitary skim-filter devices therein described and the prior skimming and filtering art are such that the described devices, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art.
 
 
 14
 Appellants argue that the findings relating to obviousness are too broad and conclusory to support the determination that Pace and Cavenah met the section 103 test.
 
 
 15
 The court found that for more than ten years prior to the time of the invention disclosed by the Pace and Cavenah patents, there was available to the swimming pool industry, from a practical viewpoint, only a single type of pool filtering apparatus for pools other than relatively large commercial pools. This apparatus, the court found, was of the sand and gravel type requiring one or more relatively large tanks containing sand and gravel. These tanks, according to the findings, were positioned above ground thirty to sixty feet from the pool because of the deck space they required and because of their unsightly appearance. The findings also list a number of recognized disadvantages associated with this type of device.
 
 
 16
 The court further found that for years the industry recognized the shortcomings and disadvantages of the sand and gravel filters and sought an answer to the problem. It remained unsolved, the court stated, until the advent of the filter apparatus of the patents in suit. The findings describe in detail the various features of the Pace and Cavenah devices, listing seven respects in which they acted together to solve the long-standing problem. With regard to the Pace patent the court found that although this solution seemed simple once it was disclosed by the inventor, it escaped the experts in the industry for over ten years.
 
 
 17
 The findings also deal with the prior art patents and while their principal effect may be to negative anticipation, they also tend to support the determination that what Pace and Cavenah accomplished was not obvious. There are also extensive findings as to the effect of the Pace and Cavenah patents in the industry, showing widespread acceptance of these devices. In our opinion the findings with regard to the test of obviousness, summarized above, are not too broad to support the determination made.
 
 
 18
 Appellants also contend, however, that the concept of disposing surface skimming and filtering elements within a single package unit was disclosed in prior patents and that the Pace and Cavenah combination of old parts was therefore obvious.
 
 
 19
 Assuming that the inclusion of these two elements in a single apparatus was obvious, the findings, which are not clearly erroneous, establish that it was the manner of combining these elements which was not obvious, not anticipated, and constituted invention.
 
 
 20
 The invalidity of a combination patent is not established by showing only that there was, in the prior art, a device containing the same elements. A combination patent envisions a conjunction or concert of known elements which produce some unusual or surprising consequences. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162. It follows that such a combination is not anticipated or rendered obvious by a prior conjunction or concert of the same elements unless the latter produces substantially the same results.
 
 
 21
 As shown by the findings referred to above, the Pace and Cavenah patents produced unusual and surprising consequences not exemplified in the prior art. Therefore, the fact, if it is a fact, that skimming and filtering devices had been combined in some examples of prior art, does not render the invention of Pace and Cavenah obvious nor in any other respect render those patents invalid.
 
 
 Infringement by Jacuzzi Bros.
 
 
 22
 Jacuzzi Bros. manufactured and sold two versions of accused filter devices. The district court found that both versions infringed the Pace and Cavenah patents. On this appeal, Jacuzzi Bros. does not challenge the finding that its devices infringed the Cavenah patent. It does, however, contest the finding that the accused devices infringed the Pace patent.
 
 
 23
 The skim filter of the Pace patent and of the accused devices are substantially the same except for the filter element which each contains. The accused devices make use of a sock-type filter element whereas the Pace patent device utilizes a disc-like filter element. The court found that the structural and operational differences between these two kinds of filter elements are insubstantial and do not change the mode of operating the skim filters, the result produced being precisely the same. The court therefore found that the sock-type filter element is the full equivalent of the disc-like element, and that both of the accused skim filters are the full equivalents, both structurally and functionally, of the combination disclosed and claimed in the Pace patent.
 
 
 24
 Jacuzzi Bros. contends that file wrapper estoppel precludes Landon from asserting that the sock-type filter elements of the accused devices are the full equivalents of the disc-like filter elements of the Pace device.
 
 
 25
 The application for the Pace patent was filed on August 22, 1955. On November 16, 1956, a new claim 10 amended on July 11, 1957, was asserted. This claim defined a filter unit sufficiently broad to embrace both types of filter elements. On October 14, 1957, the Patent Office examiner rejected claim 10 as being unpatentable over certain of the prior art references.
 
 
 26
 This claim and certain other claims were then cancelled, and four new claims (Nos. 11 to 14) were asserted. The filter element as defined in these claims, which became claims 1 to 4 of the Pace patent, is not broad enough to include, except by application of the doctrine of equivalents, the sock-type filter unit of the accused devices. In submitting the new claims counsel for the applicant made certain remarks concerning claims 13 and 14, and the Morris prior-art patent, as quoted in the margin.[1]
 
 
 27
 Predicated on these transactions, which we have set out in barest outline, Jacuzzi Bros. argues that the purpose of the cancellation of claims 5 and 8 through 10, and the assertion of the four eventually-allowed claims was to define the filter element assembly in specific details in a manner which excluded sock-type filter elements. Accordingly, the company contends, Landon may not now expand his claim to include a type of filter element which was purposefully excluded from the Pace claims.
 
 
 28
 It must be assumed that the redefinition of the filter element, as contained in the added claims which were incorporated in Pace, was purposeful. But this alone would not give rise to file wrapper estoppel so as to preclude patent coverage, on the theory of equivalency, of kinds of filter elements included in the first definition but not in the second. It must also appear that the redefinition was necessary to obtain the patent.
 
 
 29
 The gravamen of file wrapper estoppel, as this court recently said in M. O. S. Corp. v. John I. Haas Co., 9 Cir., 332 F.2d 910, is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected, or their equivalents.
 
 
 30
 As indicated by the statement made by the examiner at the time, claim 10 was not rejected because of an overly-broad definition of filter elements, or because it permitted use of a sock-type filter. It was rejected for the reason that claim 10, read as a whole, was unpatentable over other named patents. The disc-like filter element could not be the heart of the Pace invention since it, as well as the sock-type filter element, is old in the art. What was new, and what was patented, was the combination of parts in which a filter unit is correlated to the remaining elements so that the combination performs the desired skimming and filtering function.
 
 
 31
 We agree with the district court that file wrapper estoppel is inapplicable under the facts of this case. It follows that the district court did not err in finding that the accused devices of Jacuzzi Bros. infringed the Pace patent.
 
 
 Wilfulness of Infringement
 
 
 32
 The trial court determined that the infringement of the Pace and Cavenah patents by International and Jacuzzi Bros. was wilful, intentional and deliberate. Challenging this ruling, these appellants call attention to the fact that courts are traditionally reluctant to find an infringement wilful.
 
 
 33
 To question the validity of a patent does not, of itself, constitute wilful infringement. General Motors Corp. v. Dailey, 6 Cir., 93 F.2d 938, 942. Wilfulness is established only where it is shown that there was a deliberate purpose to infringe, and such a purpose is not found where the validity of the patent and any possible infringement is open to honest doubt. Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 208 F.2d 1, 5.
 
 
 34
 On August 20, 1958, Jacuzzi Bros. received written notice from counsel for Landon, charging infringement of the Cavenah patent. Counsel for Jacuzzi Bros. gave study to the matter and thereafter advised their client that the Cavenah and Pace patents were invalid. Landon thereafter charged Jacuzzi Bros. with infringement of both patents, whereupon Jacuzzi promptly filed its action, involved on this appeal, for a declaratory judgment of invalidity and non-infringement.
 
 
 35
 While this action was pending the infringing activity of Jacuzzi Bros. continued. On January 3, 1961, another judge of the same district court rendered a decision in another case, not involving Jacuzzi Bros., in which the validity of the Pace and Cavenah patents was upheld. See Landon, Inc. v. Marine Swimming Pool Equipment Co., S.D.Cal., 195 F. Supp. 41. Notwithstanding this decision, of which it had knowledge, Jacuzzi Bros. continued its infringing activity and this went on even after the district court in the case before us also ruled that the patents were valid.
 
 
 36
 Substantially the same circumstances exist with respect to the infringing activity of International.
 
 
 37
 We hold that the finding that the infringing activity of Jacuzzi Bros. and International was wilful, intentional and deliberate is supportable in the record with regard to all such conduct commencing within a reasonable time after the decision was rendered in Landon, Inc. v. Marine Swimming Pool Equipment Co., on January 3, 1961. As for any infringing activity occurring prior thereto, the finding is clearly erroneous.
 
 
 Personal Liability of Rodolfo
 
 
 38
 The district court adjudged that Rodolfo as well as International, had infringed the Pace and Cavenah patents "* * * by the manufacture and sale of International Manufacturing Co., Inc. skim filters." The damage award for infringement accordingly ran against both International and Rodolfo.
 
 
 39
 Rodolfo, construing the award of damages against him as predicated solely on the theory that International was his alter ego, argues that the undisputed facts do not establish a basis for applying here the concept of alter ego.
 
 
 40
 While the district court concluded that International was the alter ego of Rodolfo, we do not believe that this was the only basis of the award against him. The applicable conclusion of law recites among other things that Rodolfo was in personal control of international and acted as its guiding spirit and the active directing hand in full charge of its operations. In pertinent findings of fact, it was additionally found that Rodolfo "* * * directed the manufacture and sale of the accused International Manufacturing Co., Inc. skim filter." In our view this conclusion and this finding called for application of 35 U.S.C. § 271(b), which provides that "(w)hoever actively induces infringement of a patent shall be liable as an infringer." As in Marks v. Polaroid Corp., 1 Cir., 237 F.2d 428, 435, so here, Rodolfo was the moving, active conscious force behind International's infringement. Under 35 U.S.C. § 271(b) he is therefore subject to personal liability without regard to whether International is his alter ego.
 
 
 Patent Misuse
 
 
 41
 Appellants argue that Landon was guilty of patent misuse, because it adopted a policy of mandatory package licensing of both the Cavenah and Pace patents. The trial court found that, although the two patents were issued at different times, they together covered only a single article. No commercially feasible device could be manufactured under one of the patents without infringing the other. For this reason, Cavenah and Pace were found to be blocking, or interlocking, patents.
 
 
 42
 Landon's first efforts to license manufacturers under the Cavenah patent alone were frustrated by the manufacturers' unwillingness to accept Cavenah without also being licensed under Pace. In order to end this impasse, Robert M. Pace, then owner of the Pace patent, and Landon entered an agreement whereby (1) the Pace patent was assigned to Landon, (2) Landon granted Robert Pace a royaltyfree, non-exclusive license under both patents, (3) Landon promised to license the patents collectively only, and (4) Landon and Robert Pace agreed to share royalties according to a set formula.
 
 
 43
 No attempt was made to limit the number of licenses issued pursuant to this agreement. All licenses were offered under uniform terms and conditions to all who wished licenses. Since the agreement was entered into, no one has ever sought a license from Landon under the Pace patent alone or the Cavenah patent alone. Since the agreement was entered into no one has manufactured and marketed a Pace skim filter without also adding thereto the Cavenah vacuuming improvement.
 
 
 44
 The only aspect of the licensing policy which the appellants now attack is that of licensing both patents collectively and never individually.
 
 
 45
 The pooling of the patents, licensing all patents in the pool collectively, and sharing royalties is not necessarily an antitrust violation. In a case involving blocking patents such an arrangement is the only reasonable method for making the invention available to the public. Standard Oil Co. v. United States, 283 U.S. 163, 170, 51 S.Ct. 421, 75 L.Ed. 926.[2]
 
 
 46
 Appellants argue, however, that mandatory package licensing of all the patents in a pool constitutes patent misuse. Although there is no case precisely in point, appellants call our attention to American Securit v. Shatterproof Glass Co., 3 Cir., 268 F.2d 769, in which it was held that mandatory package licensing of the patents in that case fell within the tying prohibitions of the anti-trust law.
 
 
 47
 That case is different from the one before us in that it involved competing, rather than blocking, patents. In our opinion this distinction is an important one. Involved in the Securit case were method patents which, although they produced the same result, could possibly be used independently without infringing one another. The evil of mandatory package licensing in that case was that the prospective licensee, in order to obtain a license under one patent, would be compelled to accept licenses under patents that were not necessarily needed. The same evil does not arise in mandatory package licensing of blocking patents. In such a case, the prospective licensee is being compelled to accept no more than he would, in any event, have to obtain in order to make worthwhile a license under any of the patents.
 
 
 48
 This analysis of the distinction between the Securit case and the one before us also suggests why mandatory package licensing of blocking patents does not constitute an unlawful tying arrangement. A tying arrangement involves two separate, distinct products.[3] As was stated in Times-Picayune v. United States, 345 U.S. 594, 614, 73 S.Ct. 872, 883, 97 L.Ed. 1277:
 
 
 49
 "The common core of the adjudicated unlawful tying arrangements is the forced purchase of a second distinct commodity with the desired purchase of a dominant `tying' product, resulting in economic harm to competition in the `tyed' market."
 
 
 50
 It follows that it is not an unlawful tying arrangement for a seller to include several items in a single mandatory package when the items may be reasonably considered to constitute parts of a single distinct product. A license package containing blocking patents may be considered a single distinct product. By definition, blocking patents disclose interdependent parts of the same product. The product — in this case a skimming and filter device for swimming pools — is no less a single product because its novel aspects are disclosed by two interlocking patents. In such a case, not only is it not unreasonable to treat both patents as constituting a single product, but also licensing them in a package deal appears to be the most practical way of making them available for public use.
 
 
 51
 There is a further consideration which supports the result we reach here. If we were to condemn mandatory package licensing of blocking patents as a patent misuse, an owner of a blocking patent complex would be compelled to license only a part of the patent complex. This would be true even though he knew full well that the licensee would be able to use the patents only by violating the remaining unlicensed patents.
 
 
 52
 A patent infringement suit arising from such circumstances could produce only one of two results: (1) it would be held that the licensee has obtained a useless license because it cannot be used without infringing other outstanding patents, or (2) it would be held that the license of part of the blocking patent complex carried with it an implied license to utilize the remaining part of the complex.[4]
 
 
 53
 The only relief a court could logically give in such a case is a privilege to use all the blocking patents or none of them. For this reason, we cannot see how it would be unreasonable for the parties, under these circumstances, to negotiate on an all or nothing basis from the beginning.
 
 
 54
 Appellants argue that mandatory package licensing of blocking patents should not be condoned because it may result in a prospective licensee being compelled to accept an entire license package — thought by its owner to contain only interlocking patents — even though the licensee believes that he can produce a commercially feasible product under only part of the license package.
 
 
 55
 This argument is premised on a hypothetical set of facts not involved in our case. If we had a case where the licensee could produce a commercially acceptable product utilizing one patent but not infringing the others in the package, then clearly we would not have a case involving blocking patents. That we do not have such a hypothetical case is confirmed by the fact that appellants have not attempted to show what kind of device could be made under one of the patents in this case without violating the other.[5] It is further confirmed by the fact that the product that the appellants did in fact manufacture infringed both patents.
 
 
 56
 Appellants further argue that the result we reach is undesirable because it may bring about mandatory package licensing of patents, all of which appear to be interlocking but which are not all valid. The prospective licensee, in being compelled to accept licenses under all of the patents, would arguably be prevented from ever successfully challenging the invalid patents. The difficulty with this argument, again, is that it poses a hypothetical set of facts not involved in our case. It would be a patent misuse to force a licensee to accept a license under an invalid patent as the condition for receiving a license under a valid one. But such a case is not involved here, since both the Cavenah and Pace patents have been found to be valid.
 
 
 57
 The judgments are reversed in part on the issue of wilfulness, and otherwise affirmed. Appellee will recover costs on the appeals.
 
 
 
 Notes:
 
 
 [1]
 The remarks were: "Claims 13 and 14 are drawn to the specific construction of the filter housing apart from any pool with which it might be associated. The prior art discloses that it is old and well known to provide filtering means for use in conjunction with swimming or other pools for purifying the water of the pool and reintroducing the water thereto. These two claims are addressed to the specific structure developed by the applicant by which these results may be achieved."
 
 
 [2]
 It is misuse of an otherwise lawful patent pool to attach price fixing agreements as part of the licensing of pooled patents. United States v. Line Mineral Co., 333 U.S. 287, 68 S.Ct. 550, 92 L. 2d 701. There was no price fixing agreement here
 
 
 [3]
 The Supreme Court has defined a tying agreement as "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." Northern Pac. R. Co. v. United States, 356 U.S. 1, 5-6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545
 
 
 [4]
 Landon argues that an express license under one patent carries an implied license under any other patent owned by the licensor which will be infringed by operation under the grant. See National Rubber Machinery Co. v. McNeil Machine & Engineering Co., 6 Cir., 132 F.2d 436, 438; Frederick B. Stevens, Inc. v. Steel & Tubes, Inc., 6 Cir., 114 F.2d 815, 819-820. The appellants argue that, on the contrary, the granting of a license under part of a blocking patent complex does not necessarily result in an implied license under the rest. See Duval Sulphur & Potash Co. v. Potash Co. of America, 10 Cir., 244 F.2d 698, 701. We do not decide which theory is correct since the issue is not before the court in this case
 
 
 [5]
 On cross-examination, Jack E. Hursh, one of Landon's attorneys, testified that the invention of the Pace patent can be used without using the invention of the Cavenah patent, and that possibly a structure can be made which would infringe the Cavenah patent without infringing the Pace patent. This testimony, however, dealt with hypothetical possibilities insofar as physical structure is concerned, and not with any practical use which could be made of the structure. The uncontradicted evidence is that the only commercial market, or desire on the part of the public, is for a skim filter unit utilizing the inventions of both Pace and Cavenah, and the court so found