**Max J. LUGASH and Maxon Industries, Inc., Plaintiffs,**

v.

**SANTA ANITA MANUFACTURING CORPORATION, Defendant.**

No. 62–757–EC.

United States District Court
S. D. California,
Central Division.
April 2, 1965.

Fulwider, Patton, Rieber, Lee & Utecht, by Robert W. Fulwider and Frederick E. Mueller, Los Angeles, Cal., for plaintiffs.

Miketta, Glenny, Poms & Smith, William Poms and Guy Porter Smith, Los Angeles, Cal., for defendant.

CRARY, District Judge.

This case involves the validity, infringement and misuse of patents covering "load elevator for motor trucks" and hydraulic hoist for vehicles. The Letters Patent in question are Lugash Patent No. 2,837,227, filed April 15, 1957, and issued June 3, 1958, and Lugash Patent No. 2,989,196, filed September 27, 1957, and issued June 20, 1961.

The construction of the device in Patent 2,837,227 includes a device that is attached to the chassis of a truck and by a parallel linkage system moves loads on an approximately horizontal platform between ground level and the level of the truck bed. The mechanism also moves the platform into an out-of-the-way position under the truck bed after the platform has been folded into an inverted position overlying the linkage system. The manual folding of the platform to the inverted position takes place when the platform is in the extended position at the ground level.

Patent 2,989,196 involves a unitary construction in which all associated working parts, including all lifting and power components, are mounted on a main frame member and attached to the vehicle as a unit.

The inventive feature of Pat. 2,837,-227, plaintiffs assert, is the folding of the platform to an inverted position over the linkage system and its movement to and from an out-of-the-way position under the truck bed by the power mechanism.

The inventive features of Pat. 2,989,-196, plaintiffs assert, are the unitary construction which embodies all associated working parts of the device being mounted on a main frame and attachable to the vehicle as a unit and the feature which allows clearance by the platform of the hydraulic cylinder piston in the folded position.

The first question the court will determine is the validity of the Patent 2,837,-227. Does the patent involve a combination of elements and functions old in the art as asserted by defendant and, if so, do such old elements, although in new combination, have a mode of operation and resulting accomplishment which is new, novel and inventive in the art? The question of whether the inventive feature or features claimed were obvious to persons having ordinary skill in the art at the time the invention was made is also involved as well as whether the patent was anticipated by the prior art.

Patent 2,837,227 involves a new combination of old elements, the raising and lowering of a platform loader by parallel, or approximately so, linkage system, hinged to said platform and the truck or main frame of the loader and the inverting of the platform over the arms lifting and lowering same.

It appears to the court that the prior art referred to by defendant and not cited in Patent 2,837,227 does not anticipate said patent. Defendant relies strongly on Novotney 2,194,403, filed June 19, 1939, but the court concludes that patent does not have all the elements or equivalents of 2,837,227 as required nor does it or any other prior art patent do substantially the same work in substantially the same manner. As stated by the court in Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 F. 362, at 369 (8th Cir. 1914), there is no anticipation where one or more elements of a patented combination, or one

or more parts of a patented improvement, may be found in one old patent or publication, and others in another, and still others in a third.

"It is indispensable that all of them, or their mechanical equivalents, be found in the same description or machine, where they do substantially the same work by the same means."

It is mechanically *possible* to invert the platform in the Novotney over the parallel linkage system in that device but not with substantially the same result and such inverting of the platform is not disclosed in the specifications or the drawings. Defendant urges that the inverting of the platform in Novotney is "inherent" in said patent. Although the inverting of the platform is possible, the court does not conclude that it is "inherent" in Novotney, that is, inalienable or involved in the constitutional or essential character of that device nor within the meaning of the decision in the case of Huston v. Buckeye Bait Corporation, 145 F.Supp. 600, at 602–604 (D.C.S.D.Ohio). In the Huston case the court states at page 603 of its opinion:

"As this Court studies the briefs, the exhibits and the testimony relating to this patent, it is inescapable that *the essence of the invention in Claim 9 is the turning,* the new mode of operation when the weight is taken off of the clamp end of the sphere. (Emphasis ours.)

It does not appear in the instant case that the inverting of the platform in the Novotney patent can be said to in any degree be the essence of the invention contained therein.

Although the court concludes the prior art does not anticipate Pat. 2,837,227, should the court find that the inverting of the platform and stowing under the truck bed as accomplished by plaintiff is a feature, though new and novel, which was obvious to one skilled in the art within the provisions of Title 35, U.S.C. § 103, by reason of the various patents referred to by defendant and particularly those not cited in the patent in suit

which disclose parallel linkage, platforms inverted over the lift arms and stowed under truck beds, and Novotney, which though not calling for inverted platform is constructed so that such inversion would be possible?

Mr. Vogel, now president of defendant company, has participated in the making of tail gate loaders since 1947 using parallel or nearly parallel linkage systems hinged to the platform and the main frame of the loader. Mr. Vogel testified, in substance, that in early 1960 when he designed defendant's Fold-a-Lift, which appears in defendant's Model EB 1500 FL, he was aware of drop leaf tail gates, he knew of plaintffffs' Tuk-A-Way model and in late 1959 and early 1960 he knew of Watson's Hide-a-Gate model. He stated he did not see a Tuk-A-Way model or a brochure of defendant's Tuk-A-Way before designing the Fold-a-Lift but that he did see plaintiffs' device before making and selling Fold-a-Lift in September, 1960.

The Tuk-A-Way made under Patents 2,837,227 and 2,989,196 was first manufactured and sold in 1957. The evidence is clear that the Tuk-A-Way has had impressive commercial success. Its sales grew from 21 units in 1957 to 85 in 1959, 82 in 1960, 150 in 1961, 381 in 1962, 741 in 1963 and 1238 in 1964. Defendant also has substantial commercial success with its Fold-a-Lift model which it started to sell in September, 1960. These facts indicate that there was a great demand and need for a power loader, the platform of which folded and moved to a position so as to be carried under the bed of the truck. This fact is also established by witnesses of the plaintiffs engaged in the trucking business. The Court of Appeals, 9th Circuit, in Hayes Spray Gun Co. v. E. C. Brown Co., 291 F.2d 319 (1961), states at page 322:

"Appellants also point to the commercial success of the device, a fact which, though not conclusive, tends to prove the originality and utility of the product."

■ The inverting of the platform in defendant's Model EB 1500, which resulted in EB 1500 FL, was a simple matter and did not require retooling on the part of the defendant for the said Fold-a-Lift model. Certain changes were made in the older model but not major in character. When changes are viewed in retrospect they often appear to be obvious and when simple in nature one wonders why they were not thought of long ago. Simplicity, of course, does not preclude patentability.

What was the situation in April, 1957, when Patent 2,837,227 was filed? For many years tail gate and other type of ground to truck bed loaders had been manufactured and for some six to twenty-two years prior to Patent 2,837,-227, non-cited patented devices, Narvestad 2,680,529, Peters 113,577 and Jester 2,033,243, disclosed the folding of a platform by hinged means to an inverted position over the lifting arms, which in said patents were not parallel linkage arms, but none of those devices met with commercial success and the mode of operation, insofar as the inverting of the platform and moving it to a place under the truck bed, was not substantially the same. It was not until Lugash designed the device in Patent 2,837,227 in 1957 that the old elements in new combination inverted the platform over the parallel linkage arms and moved it to and from the stored position under the truck bed in a more facile and efficient manner that resulted in acceptability and commercial success in the industry. It is now obvious that it was simple for defendant to make its change in 1960 but as of the filing of plaintiffs' Pat. 2,837,-227 it has not been done, and the court concludes that was because it was not obvious to one skilled in the trade. As stated in International Manufacturing Co. v. Landon, Inc., 9 Cir., 336 F.2d 723, at 726:

"The invalidity of a combination patent is not established by showing only that there was, in the prior art, a device containing the same elements. A combination patent envisions a conjunction or concert of known elements which produce some unusual or surprising consequences. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162. It follows that such a combination is not anticipated or rendered obvious by a prior conjunction or concert of the same elements unless the latter *producers substantially the same results*." [Emphasis ours.]

Paraphrasing the court in International Manufacturing Co., supra, page 726, the fact that the old elements had been combined in some examples of prior art does not render the invention of Lugash 2,-837,227 obvious, since 2,837,227 produced novel and inventive features over the prior art.

■■ The question of validity of Pat. 2,837,227 is not easily decided in the case at bar but the apparent need for plaintiffs' device, its commercial success, the many years in the life of the elevator truck loader business without a device operating in the new and novel manner and efficiency of plaintiffs' device, the improvement of plaintiffs' device over former devices in the art and the presumption of validity of a patent which must be applied leads the court to conclude that Patent 2,837,227 is valid. The presumption of validity is based on the expertness of the Patent Office, and the appellate courts have held it can be overcome only by clear and convincing proof, that any reasonable doubt must be resolved in favor of validity and this is true though the presumption of validity becomes stronger when the Patent Office has considered the most pertinent references. In drawing its conclusions, the court has in mind the fact that the prior art patents upon which defendant is relying were not cited in Patent 2,837,-227. Patterson-Ballagh Corp. v. Moss, 201 F.2d 403, 406 (9th Cir. 1953); Neff Instrument Corp. v. Cohu Electronics, 298 F.2d 82, 86 (9th Cir. 1961); Trico Products Corp. v. Delman Company, D.C., 199 F.Supp. 231, at pages 240–241.

The court has considered the commercial success of plaintiffs' device, as noted above, having in mind the comments of the court in Chemical Construction Corp. v. Jones & Laughlin Steel Corp., 3 Cir., 311 F.2d 367, at 374, to the effect that commercial success should be resorted to only where the issue of patentability is in doubt.

With respect to infringement, the court finds from the evidence that defendant's device includes each of the elements contained in the Claims in issue, or its equivalent, that the location and spacing of the hinged parallel linkage arms with respect to the platform is substantial compliance with Claims 1 and 8 and that the stop means in the defendant's device in the fold-over position of the platform, to wit, the hydraulic cylinder housing, is the mechanical equivalent of bar 56 (Fig. 2, Pat. 2,837,227) in plaintiffs' device, which is a part of the linkage system, and that the defendant's device performs the same function in substantially the same way as plaintiffs' Pat. 2,837,227. In Hydraulic Press Mfg. Co. v. Williams, White & Co., 165 F.2d 489 (7th Cir. 1947), the court, at page 492, states:

"One does not escape infringement by providing a single element which fully responds to a plurality of elements in the patent." [Citing cases.]

See also Lilliston Implement Co. v. E. L. Caldwell & Sons, Inc., 212 F.Supp. 413 (D.C.S.D.Texas, 1962) at page 419.

Turning to validity of Pat. 2,989,196, filed September 27, 1957, defendant urges that the unitary construction of tail gate loaders is old in the art, relying on Messick 2,696,923, filed Feb. 1, 1950, and Wood '540, filed Jan. 17, 1952, as well as other prior art in evidence, including prior models of defendant's loaders manufactured and sold prior to the filing of Pat. 2,989,196. Neither said Messick or Wood patents were cited as prior art in Pat. 2,989,196.

Plaintiffs assert that the unitary construction of the device in prior art patents and in defendant's prior models is not pertinent because they do not involve the construction of the inventive features of plaintiffs' device, to wit, the fold-over platform moved to and from the out-of-the-way position under the truck bed. It appears to the court that this distinction is on without substantial difference insofar as concerns the problem of unitary construction. Pat. 2,989,196 is a combination of old elements insofar as concerns the unitary construction and such old elements perform no novel or unusual function not performed by said elements out of combination. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, at 548, 58 S.Ct. 662, 82 L.Ed. 1008 (1937), and Robinson v. Tubular Woven Fabric Co., 248 F. 526 (C.A. 2, 1917), cited in Lincoln Engineering Co., supra, at page 550, 58 S.Ct. at page 665, which states at page 542 of 248 F.:

"If the thing is old, and is applied to perform its old functions, it remains in the prior art, and cannot be made novel, in the sense of the patent law, merely because used in new surroundings that do not affect its character or mode of operation."

The folding concept in Lugash was claimed in Patent 2,837,227 and therefore not of patentable significance in Patent 2,989,196, the second Lugash patent, which was filed (September 27, 1957) several months before 2,837,227 was issued (June 3, 1958).

The Court of Appeals, 9th Circuit, in Intricate Metal Products, Inc. v. Schneider, 324 F.2d 555 (1963), comments on the significance of the fact that one of two patents is pending when the second is filed, at page 560, as follows:

"The first patent does constitute a prior art reference as to what it claimed. The significance of the fact that No. 690 was pending when No. 490 was filed is simply that the inventive advance of 490 must be over what was *claimed* in the 690 application and need not be over the totality of its disclosure as would otherwise be the case."

At page 561 the court observes:

"In the case before us, No. 490 does not claim unpatented disclosures of No. 690. Rather, it incorporates the claims of the earlier patent in combination with other disclosures of prior art."

In the case at bar, the court concludes that 2,989,196 incorporates the Claims of 2,837,227 in combination with other disclosures of prior art.

The court further finds that the non-cited prior art re Pat. 2,989,196, as noted above, and defendant's prior models manufactured and sold before plaintiffs' filing of Pat. 2,989,196, made the unitary construction of Pat. 2,989,196 obvious to one skilled in the art at the time of plaintiffs' invention. The folding platform was claimed in Pat. 2,837,-227. It appears that 2,989,196, including the problem of the platform clearing the hydraulic cylinder piston, is a variant of 2,837,227 which would be obvious to one skilled in the art.

For the reasons noted above, Pat. 2,989,196, the court concludes, is invalid. This finding makes unnecessary and improper a finding on the issue of infringement, as an invalid patent cannot be infringed.

The court granted defendant's motion to amend its pleadings to allege violation by plaintiff of Title 35, U.S.C. § 292. It appears from the evidence that plaintiff Lugash, after the issuing of Pat. 2,989,196, on instructions of his attorney, added that patent number by decal to the plates carrying No. 2,837,227, which were attached to plaintiffs' Tuk-A-Way models, after issuance of 2,989,-196.

It appears from plaintiff's testimony that some models (H–23) do not employ the unitary construction required by the Claims of Pat. 2,989,196 yet carried the numbers of both patents. The statute involved is criminal in nature and provides that the mislabeling must be " * * for the purpose of deceiving the public." The cases are uniform in holding that a fraudulent purpose or intent to deceive the public is an essential element of the offense. Julian B. Slevin Co. v. Bartgis Bros. Co., 142 F.Supp. 688, at 690 (D.C.Md.1956); G. Leblanc Corp. v. H. & A. Selmer, Inc., 310 F.2d 449, at 459 (7th Cir. 1962); Zippo Manufacturing Co. v. Rogers Import, Inc., 216 F.Supp. 670, at 700 (D.C.N.Y.1963).

After consideration of the testimony of plaintiff Lugash relative to the issue and the circumstances surrounding the placing of both patent numbers on certain models of plaintiffs' device, the court concludes that the mismarking was a mistake and that plaintiff, in doing so, did not have the intent to defraud or to deceive the public. Zuckerman v. Pilot, 71 F.Supp. 478, at 479 (D.C.S.D.N.Y. 1940). The error of plaintiffs in the misuse of Patent No. 2,989,196 on certain models should, of course, be promptly corrected in order that violation of Title 35, U.S.C. § 292 be avoided.

In Krieger v. Colby, D.C., 106 F.Supp. 124, defendant infringed plaintiff's design patent for a cap which resembled a rabbit's head and face and on which defendant had placed a label, "Patented and Copyrighted." The court found that the defendant knowingly and with deliberate intent appropriated the design patent of plaintiff and with guilty intent indicated to the public that his product was a patented article. The Krieger case involves a situation far different from that in the case at bar where the plaintiff, on advice of counsel, places a second patent number, after issue of said patent, on a device, certain models of which had the second patent number properly displayed. The power take-off model which should not have carried the second patent number was less than 1% of plaintiffs' business. It is also reasonable to infer from the evidence that sales of the model in which the loader was attached to the side of the vehicle and the power unit was not mounted on the main frame of the loader, were minimal as compared to the total sales of models of plaintiffs' Tuk-A-Way model on which both patent numbers were properly displayed.

The old case of Oliphant v. Salem Flouring Mills, 18 Fed.Cas. p. 647, No. 10,486 (D.C.Ore.1878), relied on by defendant herein and cited in the Krieger case, supra, provides that the act of placing the word "Patent" on a non-patented item

> " * * * is a species of counterfeiting. This being so, the presumption is, until the contrary appears, that the mark was placed on the article with the intention to deceive."

However, the statute involved is penal in nature and must be strictly construed and, in the circumstances noted above, it appears to the court that the requisite intent to defraud does not appear in the instant case.

By way of recapitulation as to the issues of validity and infringement, the court concludes that Patent 2,837,227 is valid and that Claims 1 and 8 and other Claims in issue dependent on said Claims 1 and 8 are infringed by defendant's device and that Patent 2,989,196, for the reasons above noted, is invalid and therefore not subject to infringement.

The court finds that defendant did not willfully, wantonly or deliberately infringe plaintiffs' Patent 2,837,227 and that neither party is entitled to attorneys fees.

Plaintiffs are entitled to injunction against further infringement of Patent 2,837,227 by defendant, as prayed, and compensatory damages for said infringement.

Defendant is entitled to injunction against plaintiffs' further charging that defendant has or is continuing to infringe plaintiffs' Patent 2,989,196.

In the circumstances, the court concludes the parties shall pay their own costs.

Counsel for plaintiffs is requested to prepare, serve and lodge proposed Findings of Fact, Conclusions of Law and Judgment in accordance with the provisions of Rule 7, as amended, Local Rules.

This Memorandum Opinion is not to be deemed a final Judgment.