217 F.2d 831
 FREIGHTWAYS, Inc., and Wilbur Slattery, Appellants,
v.
Eula Mae STAFFORD, an infant, by her next friend, Myrtle
Stafford, and her Curator, R. J. Beretta, Appellees.
FREIGHTWAYS, Inc., and Wilbur Slattery, Appellants,
v.
Mary Virginia STAFFORD, an infant, by her next friend,
Myrtle Stafford, and her Curator, R. J. Beretta, Appellees.
 Nos. 15030, 15031.
 United States Court of Appeals, Eighth Circuit
 Jan. 5, 1955.
As Modified on Denial of Rehearing Jan. 31, 1955.
 
 David R. Hardy, Kansas City, Mo., and Ike Skelton, Lexington, Mo. (Newton R. Bradley, Lexington, Mo., Lane D. Bauer, Sebree, Shook, Hardy & Ottman, Kansas City, Mo., were with them on the brief), for appellants.
 Clay C. Rogers, Kansas City, Mo. (Reed O. Gentry, James W. Benjamin and Rogers, Field & Gentry, Kansas City, Mo., were with him on the brief), for appellees.
 Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit judges.
 GARDNER, Chief Judge.
 
 
 1
 These appeals are from judgments in two actions brought to recover damages for personal injuries. Appellees are minors and their actions were brought by their next friend pursuant to the statutes of Missouri. The parties will be referred to as they were designated in the trial court. The injuries for which damages were recovered grew out of the same accident. The allegations of the complaints were substantially identical and the actions were consolidated for purposes of trial. In the complaint in each action it was alleged that at approximately three o'clock A.M. on August 16, 1952 plaintiff was a passenger in an automobile headed in an easterly direction on U.S. Highway 40 in Lafayette County, Missouri; that the defendants negligently operated a tractor-trailer vehicle belonging to defendant Freightways, Inc. so that it collided with the rear end of the automobile in which plaintiffs were being transported as passengers, inflicting serious personal injuries. It was specifically alleged that at the time mentioned the vehicle in which plaintiffs were passengers 'had become stalled upon the highway; that the lights, both headlights and tail lights, were on and lighted; that the defendants, and each of them, saw or by the exercise of the highest degree of care could have seen, plaintiffs in a position of imminent peril, oblivious thereto and unable to be extricated therefrom, and could have with the means and appliances at hand with safety to themselves, their vehicle and the cargo therein slackened the speed of their vehicle or swerved same, and thereby have avoided the collision complained of; or, could have stopped their vehicle before striking the automobile in which plaintiffs were passengers and thereby have avoided the collision complained of; that the driver of the vehicle in which plaintiffs were passengers had gotten out of the vehicle and had proceeded west and to the rear of the stalled vehicle in which plaintiffs were passengers and was signaling and waiving his arms while was the lane which defendants' vehicle was traveling; that the said signaling did warn the defendants and each of them, of the danger but the defendants in utter disregard of said warning and signals, continued forward with their vehicle without slackening their speed or swerving said vehicle and they drove their vehicle into and against the vehicle in which plaintiffs were passengers.' It is then charged that the defendants drove the tractor-trailer at a high and dangerous rate of speed. During the trial the complaints were amended so as to add charges of failure to keep a lookout, failure to stop and failure to maintain control. The defendants answered denying negligence and pleaded that the accident resulted solely from the negligence of those in charge of the automobile in which plaintiffs were being transported.
 
 
 2
 The consolidated action was tried to the court without a jury and resulted in judgments in favor of plaintiffs.
 
 
 3
 On the night of August 15, 1952, Mrs. Stafford was in the town of Odessa, Missouri with her four children including the plaintiffs in these actions. She there met one Aaron Eison and an Elsie Mayes. The trio seem to have indulged in some drinking and about midnight decided to drive to Kansas City. It was decided to take Elsie Mayes' car but she was unable to get the car started and instead they took the car of Aaron Eison who accompanied them. Three of Mrs. Stafford's children and one of Elsie Mayes' were placed in the back seat of the car while the three adults with Mrs. Stafford's fourth child occupied the front seat and at the time of the subsequent accident the children in the back seat were asleep. The Eison car was an old, dilapidated Chevrolet the lights of which faded out whenever the engine stopped operating and the engine at frequent and uncertain intervals ceased to operate. The self-starter was apparently out of commission and the car had to be pushed in order to start it at Odessa and the lights came on only after the car had been started. As they proceeded westerly toward Kansas City they stopped for gas at a filling station at Bates City and again the car could not be started with the self-starter but had to be pushed in order to start it. The parties then proceeded westerly on this Highway 40 with the intention of going to Kansas City but when they reached the Jackson County line they turned around because they feared to enter Kansas City presumably because of the bad condition of the car in which they were riding. This Highway 40 has a hard surface eighteen feet in width. They then proceeded easterly on Highway 40 toward their several homes retracing the route over which they had passed but they passed the place where Mrs. Stafford lived without stopping and and as they reached a point known in record as the Ford home which was located on the north side of Highway 40 and were about to make a left turn the car stalled, the engine stopped and both the headlights and the tail lights faded out. It was then about 3:45 A.M., August 16, 1952, and the car was stalled in the eastbound lane of Highway 40 about ten feet west from the entrance to the Ford home. While the car was so stalled and the three adult occupants were out of the car making futile attempts to start it, a westbound car with bright headlights passed the stalled car and then either proceeded slowly or came to a standstill. Defendants' tractor-trailer was proceeding eastward on the south lane of Highway 40 and when it reached a point about six hundred feet west of the Ford driveway the driver observed the westbound car with the bright lights which tended to blind him and he flicked his lights from low to high beam and back again to low beam asking for dimmers and thereupon the westbound car lowered its lights and then raised them back to high beam. This procedure was then repeated by defendant Slattery when he failed to get the dimmers he asked for. Without knowledge of the presence of the stalled car in the eastbound lane defendant Slattery having slowed his speed from 45 to about 30 miles per hour approached the car with the bright lights and after passing it for the first time observed the stalled car when about ten or fifteen feet from it. He was unable to stop his tractor-trailer or swerve it either to the right of left. The resulting collision inflicted serious injuries on the plaintiffs. As the tractor-trailer reached a point where the driver observed the presence of the stalled car the adult parties who had occupied the car were on the highway, some of them running to the north and some of them running to the south. The evidence will be further developed in connection with the contention that certain findings are not sustained by the evidence and that they are in conflict with other findings found by the court. The court assessed damages in favor of plaintiff Eula Mae Stafford in the sum of $3,000.00 and in favor of plaintiff Mary Virginia Stafford in the sum of $150,000.00. From the judgments entered the defendants prosecute these appeals.
 
 
 4
 In seeking reversal defendants in substance contend that:
 
 
 5
 1. The trial court prejudicially erred in making findings of fact and conclusions of law which are contradictory, unsupported by competent evidence and upon which the judgment of the trial court cannot stand.
 
 
 6
 2. Plaintiffs' counsel misled the trial court into making prejudicially erroneous findings of fact and conclusions based on counsel's statements unsupported by competent evidence.
 
 
 7
 3. The court erred in admitting incompetent evidence (a) in permitting the witness Gehrig to testify to statements made by Aaron Eison and (b) in admitting photographs taken by plaintiffs which were made under conditions materially different from those existing at the time of the accident.
 
 
 8
 4. The trial court erred in not entering judgment for defendants as a matter of law because the competent evidence did not show any negligence by defendants.
 
 
 9
 5. The judgment rendered in favor of Mary Virginia Stafford was not sustained by the evidence and was so excessive as to shock the conscience and indicate that it was the result of passion and prejudice.
 
 
 10
 As indicated this case though normally a jury case was tried to the court without a jury. The court therefore performed the function of the court in determining the applicable law and the function of a jury in determining the ultimate pertinent facts. We shall consider together the contention that the findings are so conflicting on material issues that they cannot sustain the judgments and the contention that the evidence is insufficient to sustain judgments in favor of the plaintiffs. Rule 52(a). Federal Rules of Civil Procedure, 28 U.S.C.A., provides that 'In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon * * *.' Pursuant to this rule the court made and entered specific findings of fact and it is contended that certain of these findings are in irreconcilable conflict. Manifestly if an irreconcilable conflict exists between ultimate findings of material facts a judgment based upon such findings cannot stand In considering a situation where facts found are in irreconcilable conflict it is the duty of the appellate court to accept those which are most favorable to the appellant. 3 Am.Jur., Appeal and Error, Section 898. The rule applicable is analogous to that applied in the case of answers to special interrogatories submitted to a jury. Where the facts found will warrant a judgment either for the plaintiff or for the defendant, dependent upon which is accepted as controlling, then the findings are in irreconcilable conflict.
 
 
 11
 Plaintiffs' right to recover is dependent upon whether the collision causing their injuries resulted from negligent acts of the driver of the tractor-trailer. The physical facts can scarcely be said to be in dispute. Appellees' counsel in their brief admit certain facts. Thus they say it is admitted that the automobile had no lights burning; that it was standing upon and occupying the eastbound traffic lane; that all of the adults who had been in the automobile were out of the automobile, apparently behind it; and that it was approximately 3:45 in the morning and dark. In the final analysis the controlling question of fact was whether or not the driver of the tractor-trailer could in the exercise of the highest degree of care as required by the Missouri statute have seen the stalled automobile in time to have avoided colliding with it. 340.010 RSMo 1949, V.A.M.S. On this issue the court made findings which are claimed to be in conflict. At the request of defendants the court found that defendant Slattery could not see the Eison car until after he passed the westbound car with the bright lights; that after defendant Slattery passed the car with the bright lights it took approximately one second for his eyes to readjust so that he could distinguish the outline of objects ahead; that after defendant Slattery's eyes readjusted he was from twelve to fifteen feet to the west of the Eison car; and that the car with the bright lights was in the westbound lane a short distance westerly of the Eison car. Labelled as a conclusion the court at the request of defendants found that the black Eison Chevrolet '* * * was not a discernible object and cannot be seen by one approaching said bright lights until after the same have been passed by a person proceeding in an easterly direction toward the same.' The court also found at defendants' request that defendant Slattery when approximately one city block or about 300 feet from the car with the bright lights slowed his speed down from 45-50 miles per hour to 30-35 miles per hour and that defendant Slattery could not have stopped his tractor-trailer in less distance than 129 feet. The court then found that the driver of the tractor-trailer could see the Eison car when at a distance of 200 feet in conflict with the finding that the driver could not see the Eison car until within 12 or 15 feet from it. Further the court found that the driver of the tractor-trailer could and should have seen the Eison car at a point sufficiently distant to have enabled him to stop the equipment before striking the Eison cor. In conflict with the finding that the driver of the tractor-trailer had it under control when he reduced his speed to 30-35 miles per hour the court found that the driver did not have the tractor-trailer under complete control. There are numerous other irreconcilable conflicts in the findings and in effect the court concluded it was negligence on behalf of the driver of the tractor-trailer not to have done what was impossible for him to have done. According to one finding the tractor-trailer could not be stopped in less than 129 feet, it was under control and the stalled car could not be seen until the tractor-trailer was within 12 to 15 feet from it. The findings on these vital questions are so conflicting that they cannot sustain a judgment for plaintiffs. Not only is there an irreconcilable conflict but there is no substantial evidence to sustain the finding that the driver of the tractor-trailer in the exercise of the highest degree of care could have seen the stalled Eison car in time to have avoided striking it. The driver of the tractor-trailer could not have anticipated that someone would leave an automobile standing in the eastbound lane without lights or other protection. Bedsaul v. Feeback, 341 Mo. 50, 106 S.W.2d 431; Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498; Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299; Davis v. F. M. Stamper Co., 347 Mo. 761, 148 S.W.2d 765. One cannot ordinarily be charged with negligence for failing to anticipate negligence on behalf of another.
 
 
 12
 It is however argued in effect that the driver of the tractor-trailer was warned of the presence of the Eison car in his lane of traffic by reason of the fact that the driver of the westbound car either passing slowly westward or standing still flicked his headlights. There is no dispute in the testimony as to what occurred. The westbound automobile had passed the stalled car before it was observed by the driver of the tractor-trailer. It had its headlights on high beam. The driver of the tractor-trailer flicked his lights indicating that he wished the driver of the westbound car to dim his lights. In response to this signal the driver momentarily dimmed his lights and then turned them on high beam. The driver of the tractor-trailer again signaled for dimmers in response to which the driver of the westbound car again dimmed his lights and then turned them back on high beam. It is argued that this was a warning to the driver of the tractor-trailer of possible danger. In the first place it is important to observe that the lights on the westbound car gave no signal of any kind until first signaled by the driver of the tractor-trailer. The driver of the tractor-trailer was warranted in assuming that the driver of the westbound car signaled in reply to the signal of the tractor-trailer and not as a signal of any danger. In reality the driver of the westbound car gave no signals; he only answered signals. There is certainly no known practice warranting the thought that the driver of the westbound car in answering the signals from the driver of the tractor-trailer was warning him of an obstruction on the highway. Any such inference is based upon pure speculation. Neither is there any merit in the contention that the photographs taken by plaintiffs and identified in the record as exhibits 12 to 15 were competent evidence tending to show that Slattery could in the exercise of proper care have seen the stalled automobile in time to avoid colliding with it. These photographs were taken more than a year subsequent to the time of the accident and under conditions so materially differing from those existing at the time of the accident as to render them inadmissible as proof of conditions existing at the time of the accident. In these photographs the stalled car was not a 1940 model Chevrolet but was a 1950 Packard. The night on which they were taken was bright moonlight whereas on the night of the accident it was very dark. The Packard car had built-in reflectors in the tail lights whereas the stalled car had no built-in reflectors in the tail lights. The car placed on the westbound lane was placed only fifteen feet west from the Packard car whereas the westbound car on the night of the accident was at least fifty-seven feet west of the stalled car. Slattery was driving toward the stalled car at a rate of 30-35 miles per hour while the camera which took the pictures as a part of the experiment was located in a car that was not moving but was stationary. There were other material differences in the conditions prevailing at the time these photographs were taken and those prevailing at the time of the accident. The photographs were entitled to no probative force. Cook v. St. Joseph Ry., Light, Heat & Power Co., 232 Mo.App. 313, 106 S.W.2d 38; Riggs v. Metropolitan St. Ry. Co., 216 Mo. 304, 115 S.W. 969; Griggs v. Kansas City Rys. Co., Mo., 228 S.W. 508; Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918. In considering this question the Missouri Court of Appeals in Cook v. St. Joseph Ry., Light, Heat & Power Co., supra, said (232 Mo.App. 313, 106 S.W.2d 45):
 
 
 13
 'In order for experimental evidence to be admissible, the conditions under which the experiment is made should conform to the conditions existing at the time and place of the accident. In other words, the conditions and circumstances must be substantially reproduced.'
 
 
 14
 It is to be presumed in an action tried to the court without a jury that only competent evidence will be considered but counsel for plaintiffs are contending that the evidence was competent and that is tends to sustain the claim of negligence on behalf of defendants. If it was considered by the court and given any weight whatever it was error to do so.
 
 
 15
 It is further argued and the court found that it was negligence for the driver of the tractor-trailer to enter into an area where he could not see because of the blinding lights of the westbound automobile. As we have already observed the driver was warranted in assuming that no obstruction would be left on the highway unprotected by lights or otherwise. As he met the strong lights of the westbound car he was but momentarily blinded and he was not required to stop his tractor-trailer because of this situation. Powell v. Schofield,223 Mo.App. 1041, 15 S.W.2d 876; Sheffer v. Schmidt, 324 Mo. 1042, 26 S.W.2d 592; Bedsaul v. Feeback, 341 Mo. 50, 106 S.W.2d 431.
 
 
 16
 It is, however, contended by plaintiffs that the defendants cannot urge either the question of the irreconcilable conflict in the findings or the insufficiency of the evidence to sustain the judgments because they did not move in the trial court to modify or amend the findings nor for a new trial on the ground of insufficiency of the evidence to sustain the findings or the judgments. This contention, we think, is unsound. The case was not tried to a jury but to the court. The rule as to the prerequisites to a review in such a case is well stated in Simkins Federal Practice, Third Edition, Section 648, as follows:'When findings of fact are made in action tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made, in the District Court, an objection to such findings, or has made a motion to amend them, or a motion for judgment.'
 
 
 17
 Quite aside from the rule with reference to the conflicting findings we have considered the record as a whole with great care and are of the view that there is no substantial evidence of any negligence in the operation of the tractor-trailer which caused or contributed to the unfortunate accident.
 
 
 18
 In view of our conclusions that the judgments appealed from must be reversed we pretermit consideration of the other contentions urged by the appellants as it seems unlikely that on retrial the same questions will again arise. The judgments appealed from are therefore reversed and the causes remanded to the trial court with directions to grant a new trial.