620 F.2d 1347
 62 A.L.R.Fed. 713, 205 U.S.P.Q. 302
 MAYVIEW CORP., an Illinois Corporation, Plaintiff-Appellant,
v.
Harvey B. RODSTEIN, an Individual and Rodac Pneumatic Tools,
Inc., a California Corporation, and Rodac
International Corporation, a California
Corporation, Defendants-Appellees.
Harvey B. RODSTEIN, an Individual, and Rodac Pneumatic
Tools, Inc., a California Corporation, and Rodac
International Corporation, a California
Corporation,
Counterplaintiffs-Appellants,
v.
MAYVIEW CORP., an Illinois Corporation, Leonard Shapiro,
Irving Fisher, Tom Sato and Shig Nakagiri, Individuals,
Astrosound, a corporation, Astrosound, a Division of
Marquette Appliance Co., a corporation, Marquette Appliances
Co., a corporation, Autoquip Distributors, Western Skills,
General Merchandising Co., Counterdefendants-Appellees.
 Nos. 77-3468, 77-3481.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 4, 1980.
Rehearing Denied April 23, 1980.
 
 Charles H. Schwartz, Roston & Schwartz, Los Angeles, Cal., for plaintiff-appellant.
 Albert M. Herzig, Herzig & Walsh, Beverly Hills, Cal., on brief; Joseph R. Evanns, Beverly Hills, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY, ANDERSON and HUG, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 The district court held a utility patent and three design patents invalid for a variety of reasons, including anticipation, obviousness and perpetration of frauds upon the Patent Office and the court. The court also held that this case was an "exceptional" one justifying an award of attorney's fees of $90,850. We affirm in part, and vacate and remand in part.
 
 I. Statement of the Case
 
 2
 Rodac Pneumatic Tools, Inc., and Rodac International Corp. (collectively referred to as Rodac) are companies owned by Harvey B. Rodstein. Rodac manufactures, imports and sells certain air-powered tools, including hand-held sanders and drills.
 
 
 3
 Mayview Corporation (Mayview) was, at the time this suit began, owned by Leonard Shapiro, who is now deceased. Mayview also markets air-powered tools, including hand-held sanders and drills.
 
 
 4
 Mayview brought suit against Rodac and Rodstein in March 1971, seeking a declaration that Letters Patent No. 3,563,134 (the '134 patent) and Design Patents Nos. D-210,793, D-210,794 and D-210,086 (the '793, '794 and '086 patents or the design patents) are invalid. Mayview also sought a declaration that it had not infringed these patents and alleged that Rodac and Rodstein had violated the antitrust laws in procuring and attempting to enforce these patents. Mayview apparently filed this action in response to Rodstein's and Rodac's attempts to enforce these patents against Mayview and its customers.
 
 
 5
 Rodac and Rodstein counterclaimed against Mayview, Shapiro and Irving Fisher, an associate of Shapiro's formerly employed by Rodstein. Rodstein and Rodac alleged that the counter-defendants had willfully infringed the '134 and design patents, had infringed Rodac's trademark, had misappropriated trade secrets and had engaged in unfair competition against Rodac and Rodstein.
 
 
 6
 Mayview later amended its complaint to state an additional cause of action for malicious prosecution.
 
 
 7
 The district court issued a preliminary injunction enjoining Mayview, Shapiro and Fisher from infringing the '134 patent and the Rodac trademark. That decision was appealed to this court and we reversed, holding that the district court's failure first to find the patent valid precluded issuance of the injunction. We said the presumption of validity attaching to a patent issued by the Patent Office was "too slim a reed to support a preliminary injunction." Mayview Corp. v. Rodstein, 480 F.2d 714, 718 (9th Cir. 1973).
 
 
 8
 Trial was held and the district court concluded that (1) the '134 patent was invalid, (2) the design patents were invalid, (3) Rodstein and Rodac falsely marked sanders in violation of 35 U.S.C. § 292, (4) Mayview failed to carry its burden of proof on its antitrust claims, (5) Rodac and Rodstein did not engage in malicious prosecution by pursuing their counterclaims, (6) Mayview, Shapiro and Fisher did not infringe the '134 patent, and (7) Rodstein and Rodac's other counterclaims must be dismissed for failure to present any evidence. The court also held that the case was "exceptional" under 35 U.S.C. § 285 and awarded Mayview, Shapiro and Fisher $90,850 in attorney's fees.
 
 
 9
 Rodstein and Rodac appeal from the district court's final judgment.[1] They contend the district court erred in holding that the patents were invalid, that they falsely marked certain sanders, and that they did not present sufficient evidence on their counterclaims. They also argue that the district court erred in awarding any attorney's fees to Mayview, Shapiro and Fisher, or, at the very least, that the amount awarded is excessive.
 
 
 10
 Mayview, Shapiro and Fisher filed a cross-appeal, contending that the district court's award of attorney's fees was insufficient and that the district court erred in failing to find that Rodstein and Rodac violated the antitrust laws and engaged in malicious prosecution.
 
 II. Validity of the Patents
 
 11
 This case involves two distinct types of patents: (1) patents for "inventions," or so-called "utility" patents, which are issued for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," and (2) design patents, which are issued for "any new, original and ornamental design for an article of manufacture." 35 U.S.C. §§ 101, 171. Although the two kinds of patents involved here are different, many of the conditions for issuance of either a utility patent or a design patent are the same. See 35 U.S.C. §§ 102-103, 171. Nonetheless, for the sake of clarity and convenience, we treat separately the utility patent and the design patents in this case.
 
 A. The '134 Patent
 
 12
 The district court held the '134 patent invalid for three independent reasons: (1) the invention was anticipated by two previously issued patents and three previously known and disclosed sanders, 35 U.S.C. § 102; (2) it was obvious at the time it was "invented" to a person having ordinary skill in the art, given the prior art of the same two patents and three sanders that anticipated it, 35 U.S.C. § 103; and (3) Rodstein was not the sole inventor of the sander as he represented in the patent application, 35 U.S.C. § 111.[2] Because we affirm the district court's conclusion of invalidity on the ground that the applicant was not the sole inventor, we need not address the other grounds relied upon by the district court.
 
 Section 101 of title 35 provides:
 
 13
 Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.
 
 
 14
 (Emphasis added.) Section 102 provides some of the conditions for obtaining a patent. Among them is the following: "A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). Section 111 echoes this disqualification ("Application for patent shall be made by the inventor"), as does § 115 ("applicant shall make oath that he believes himself to be the original and first inventor" of the subject matter sought to be patented).
 
 
 15
 The district court held that Rodstein violated § 111 (and §§ 101, 102(f) and 115) in applying for and receiving the '134 patent as the sole inventor of the subject matter. Such a conclusion, if not erroneous, would support a declaration that the '134 patent is invalid. For "it has been held repeatedly that a valid patent can only be granted to the real inventor, that the original and first inventor must make the application, and that, in the case of a patent which is a joint invention, a patent issued to one only of the inventors is void." Pointer v. Six Wheel Corp., 177 F.2d 153, 157 (9th Cir.), cert. denied, 339 U.S. 911, 70 S.Ct. 570, 94 L.Ed. 1338 (1949).
 
 
 16
 The district court's conclusion that Rodstein was not the sole inventor of the subject matter of the '134 patent raises two questions on review. The first is whether the district court's findings of fact relevant to the issue of inventorship are clearly erroneous. Fed.R.Civ.P. 52(a). The second is the legal question of whether, given the facts that the district court found, the court erred in concluding that Rodstein was not the sole inventor of the '134 subject matter.
 
 1. Evidence of Inventorship
 
 17
 The district court found that (1) Sumida, an employee of Rodstein, "designed and developed, without any help from Rodstein, a sander"; (2) Sumida assembled the sander according to his design and made several alterations to it; (3) only after the sander was successfully tested did Sumida notify Rodstein of its existence; and (4) minor changes were made in the Sumida prototype prior to commercial production, but these changes were not reflected in the '134 patent application, and therefore, "the Sumida prototype became the '134 patent." Rodac and Rodstein challenge these findings on three grounds.
 
 
 18
 First, they contend that the district court erred in uncritically adopting the findings and conclusions prepared by counsel for Mayview, Shapiro and Fisher. In response to this contention, we quote a recent decision by another panel of this court:
 
 
 19
 Wholesale adoption of the prevailing party's proposed findings complicates the problems of appellate review. (Citations omitted.)
 
 
 20
 Although the practice has been disapproved, we have indicated that it may be permissible in cases "involving highly technical issues such as may be involved in patent cases and complex scientific problems." Industrial Bldg. Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1339-40 (9th Cir. 1970) (, disapproved on other grounds, Kung v. FOM Investment Corp., 563 F.2d 1316, 1318-19 (9th Cir. 1977)).
 
 
 21
 Certainly, the fact that the trial judge has adopted proposed findings does not, by itself, warrant reversal. But it does raise the possibility that there was insufficient independent evaluation of the evidence and may cause the losing party to believe that his position has not been given the consideration it deserves. These concerns have caused us to call for more careful scrutiny of adopted findings. (Citations omitted.)
 
 
 22
 Although we do scrutinize adopted findings by conducting a painstaking review of the lower court proceedings and the evidence, we do not abandon the clearly erroneous standard. We will overturn factual findings if the record firmly convinces us that a mistake has been made. . . . Such a standard assures litigants that errors will be corrected after review. A court reviewing findings drafted by a litigant merely has a more burdensome task.
 
 
 23
 Photo Electronics Corp. v. England, 581 F.2d 772, 776-77 (9th Cir. 1978) (footnotes omitted).
 
 
 24
 This is just such a case "involving highly technical issues" for which this practice is permissible. Furthermore, the district court directed that these findings and conclusions be "consonant" with its memorandum decision and had rejected previously filed proposed findings as "argumentative." The district court thus clearly set the pattern for the findings and conclusions and did not merely sign a "blank check."
 
 
 25
 Next, Rodstein and Rodac argue that the district court clearly erred in crediting the testimony of Sumida in light of their contention that Sumida committed perjury. We disagree.
 
 At trial, Sumida testified as follows:
 
 26
 Q Did you ever apply for a U.S. Patent or any other patent on the device shown in Exhibit II-a (the '134 sander) or anything like that?
 
 
 27
 A No, sir.
 
 
 28
 Q Why not?
 
 
 29
 A Why not? I was hired to do a particular job, I was not told or asked to apply for a patent and assign it to Rodac and company. Therefore, there is no reason for me to apply for a patent on my own.
 
 
 30
 Q Why not?
 
 
 31
 A I really don't know what you mean by "why not."
 
 
 32
 Q I'll ask another question.
 
 
 33
 You consider that you made an invention?
 
 
 34
 A No, I do not, absolutely not, not from the later facts at (sic ) the Cobra and the patent of Hendrickson, which I've learned later.
 
 
 35
 After trial, Rodac and Rodstein discovered that Sumida had applied for a patent on a "mechanism for driving (a) reciprocating tool" before this action was brought. They immediately made motions under Fed.R.Civ.P. 59 and 60(b), requesting a rehearing or a new trial. Their argument below and in this court is that Sumida's patent application covered the subject matter of the '134 patent and he therefore committed perjury when he testified as quoted above. According to Rodstein and Rodac, Sumida's perjury casts a shadow upon all of his testimony, making the district court's reliance thereon clearly erroneous.
 
 
 36
 In rejecting this assignment of error, we begin by noting that the alleged perjurious statement was not directly relevant to the issue of inventorship; it went instead to the question of obviousness. Its only relevance to the inventorship issue is that, if perjury is proved, the credibility of Sumida's testimony concerning the design and development of the '134 subject matter may be affected.
 
 
 37
 The evidence that Rodstein and Rodac assert proves Sumida's perjury was discovered after trial and after the court had entered a memorandum decision in this case. It is well settled that a motion to reopen a case to hear new evidence affecting the credibility of a witness is addressed to the discretion of the trial judge, Thomas v. SS Santa Mercedes, 572 F.2d 1331, 1336 (9th Cir. 1978), as are all motions for relief under Rules 59 and 60(b), see Martella v. Marine Cooks & Stewards Union, 448 F.2d 729, 730 (9th Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972); Natural Resources, Inc. v. Wineberg, 349 F.2d 685, 691 (9th Cir. 1965), cert. denied, 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed.2d 525 (1966).
 
 
 38
 Under the circumstances of this case, we do not believe that the district court abused its discretion in refusing to grant relief under Rules 59 and 60. To begin with, the court was faced with conflicting evidence concerning the question of whether Sumida's patent application was for the subject matter of the '134 patent or something very similar. Having carefully reviewed this evidence, we cannot say that the district court would have clearly erred in concluding that Sumida had not lied while on the stand and therefore there would be no abuse of discretion in rejecting Rodac and Rodstein's motions.
 
 
 39
 Even assuming that Sumida did indeed commit perjury, the court did not err in rejecting the motions under Rules 59 and 60, for though the perjury might have cast a shadow on all of Sumida's testimony, it did not prevent Rodstein and Rodac from meeting his testimony concerning inventorship at trial. See Toscano v. Commissioner, 441 F.2d 930, 934 (9th Cir. 1971).[3]
 
 
 40
 Furthermore, even as to the obviousness issue to which Sumida's testimony was directly relevant, the district court, in its memorandum decision and findings of fact, characterizes Sumida's testimony as "bolstering" testimony from other witnesses to the same effect. Thus, Sumida's testimony was cumulative and not determinative, and the district court would not have abused its discretion in denying the motions even if it had concluded Sumida's prior testimony was perjurious.
 
 
 41
 Rodstein and Rodac's final challenge to the court's findings is based on their assertion that the court ignored certain evidence tending to show that Rodstein, and not Sumida, was the inventor of the '134 subject matter. Rodstein and Rodac admit, however, that there was conflicting evidence on the question of inventorship. It is for the trial court to resolve conflicts in the evidence, and we may overturn the district court's resolution only if it is clearly erroneous. Monroe Auto Equipment Co. v. Superior Industries, Inc., 332 F.2d 473, 484-85 (9th Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 175 (1964).
 
 
 42
 "A finding is clearly erroneous (under Rule 52(a)) only when 'although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.' " Thomas v. SS Santa Mercedes, 572 F.2d at 1335 (emphasis added), quoting McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). Having very carefully reviewed all of the evidence before the district court, and paying particular attention to the testimony of Fisher, Sumida and Hirami, the machinist who built parts at Sumida's direction and aided him in assembling the prototype sander, and Rodstein's affidavit (Trial Exhibit 17), we are not left with a "definite and firm conviction that a mistake has been committed." The testimony of Sumida, Hirami and Fisher support the district court's findings. Only Rodstein's affidavit is to the contrary. Even had Rodstein's affidavit been uncontradicted, the court would not have clearly erred in refusing to accept it at face value. See Koivunen v. States Line, 371 F.2d 781, 783 (9th Cir. 1967). That the court chose to believe the testimony of three witnesses over the self-serving statement of a party certainly does not make its findings clearly erroneous.
 
 2. Legal Conclusion of Inventorship
 
 43
 Rodstein and Rodac contend that whatever contribution Sumida made to the development of the subject matter of the '134 patent was insufficient as a matter of law to make him an inventor of that subject matter, citing Agawam Co. v. Jordan, 74 U.S. (7 Wall.) 583, 602-03, 19 L.Ed. 177 (1868). Accepting, as we have, the finding of the district court relevant to the issue of inventorship, we must also affirm the district court's conclusion that Rodstein was not the sole inventor of the '134 subject matter as he represented in his patent application.
 
 
 44
 The district court found that Sumida, without any help from Rodstein, developed and perfected the subject matter of the '134 patent. Only one conclusion can be drawn from such a finding: Sumida was the sole inventor of the '134 patent's subject matter.
 
 
 45
 Rodstein and Rodac's citation to Agawam Co. v. Jordan does not aid their cause. In that case, the Court said:
 
 
 46
 Persons employed, as much as employers, are entitled to their own independent inventions, but where the employer has conceived the plan of an invention and is engaged in experiments to perfect it, no suggestions from an employee, not amounting to a new method or arrangement, which, in itself is a complete invention, is sufficient to deprive the employer of the exclusive property in the perfected improvement. But where the suggestions go to make up a complete and perfect machine, embracing the substance of all that is embodied in the patent subsequently issued to the party to whom the suggestions were made, the patent is invalid, because the real invention or discovery belonged to another.
 
 
 47
 Id. at 603. Here, the district court's findings indicate that Rodstein did not "conceiv(e) the plan of (the) invention," but that Sumida "(made) up a complete and perfect machine, embracing the substance of all that is embodied in the patent." Rodstein's only contribution to the development of the '134 subject matter seems to have been his idea of using a single piston in an in-line sander to "get around" the '823 and '494 patents. This is not enough to make him an inventor, let alone the sole inventor, of the '134 sander.
 
 
 48
 We therefore agree with the district court that the '134 patent is invalid because of Rodstein's improper application as the sole inventor of the subject matter of that patent.
 
 B. The Design Patents
 
 49
 The district court held that the three design patents were invalid. Two of the patents the '793 and '794 design patents covered the design of certain sanders produced by Rodac (sanders covered by the '134 patent). The other patent, the '086 design patent, was for the design of a pneumatic drill. The district court held the '793 patent invalid for both anticipation and obviousness, while the '794 and '086 patents were invalidated on the ground of obviousness only.
 
 
 50
 Section 171 provides that the condition for patentability imposed by § 103 nonobviousness applies to design patents. Section 103 provides:
 
 
 51
 A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
 
 
 52
 While the statutory condition of nonobviousness is ultimately an issue of law, "the underlying analysis is one of fact." St. Regis Paper Co. v. Royal Industries, 552 F.2d 309, 311 (9th Cir.), cert. denied, 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977).
 
 
 53
 As stated in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966):
 
 
 54
 Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.
 
 
 55
 The appropriate viewpoint in this inquiry "is the eye of an ordinary observer, the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295, 299 (9th Cir. 1970), quoting Smith v. Whitman Saddle Co., 148 U.S. 674, 680, 13 S.Ct. 768, 37 L.Ed. 606 (1893), itself quoting Jennings v. Kibbe, 10 F. 669, 670 (C.C.S.D.N.Y.1882). Thus, a design patent is invalid if, considering the scope and content of the prior art and the differences between the prior art and the design covered by the patent, from the point of view of the ordinary intelligent man there is "substantial similarity in the overall appearance between the patented design and the prior art relied upon." Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d at 299.
 
 
 56
 Our careful review of the record leads us to the conclusion that the district court did not err in finding that the '793 design and the Hutchins 900 sander are "almost identical." It necessarily follows from this near identity that there is "substantial similarity" between the '793 design and that of the Hutchins 900. We therefore affirm the district court's conclusion that the '793 patent is invalid for obviousness.[4]
 
 
 57
 Similarly, we agree with the district court that there is little difference between the ARO and Michigan Pneumatic drills as disclosed in the record and the '086 design. The overall appearance of the '086 design is substantially similar to the appearance of both the ARO and the Michigan Pneumatic drills. We accordingly affirm the district court's holdings that the '086 design is obvious and that the '086 patent is invalid.
 
 
 58
 This brings us to the '794 design patent. The district court relied only on the Hutchins 800 sander in holding that the '794 patent is invalid. The court defined the scope and content of the prior art as the Hutchins 800 and found that the external appearance of the '794 sander "is substantially identical to the Hutchins 800 sander except for the handle." A review of these devices, as pictured in the record, discloses that the shapes of the handles are indeed different. The district court apparently felt, however, that this difference had no functional significance. Given the other similarities between the two devices we cannot say its finding of substantial similarity is clearly erroneous. We therefore affirm the district court's conclusion that the '794 patent is invalid for obviousness.
 
 III. The Non-patent Claims and Counterclaims
 
 59
 The district court eliminated all of the various non-patent claims and counterclaims for a variety of reasons.
 
 A. The Antitrust Claims
 
 60
 Mayview included an antitrust claim against Rodstein and Rodac on the ground that their attempted enforcement of the invalid patents violated § 2 of the Sherman Act, 15 U.S.C. § 2.
 
 
 61
 In Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the Supreme Court held that the maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action for monopolization or attempted monopolization under § 2. The Court did not hold, however, that patent misuse constitutes a per se Sherman Act violation, but rather required that the aggrieved party establish the traditional elements of a violation of § 2, which include, inter alia, an analysis of the relevant markets and an examination of the exclusionary power of the illegal patent claim. See also Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 992-96 (9th Cir. 1979).
 
 
 62
 The district court found that Mayview adduced no "hard evidence" on the relevant geographic, product or customer markets, and that there was no evidence on the degree of market control by Rodstein and Rodac, or the degree of Mayview's exclusion from the market. These findings are not clearly erroneous and we therefore affirm the district court's decision against Mayview on the antitrust claim.
 
 
 63
 B. Rodstein and Rodac's Patent Infringement Counterclaims
 
 
 64
 The district court found that all of Rodstein and Rodac's patent infringement counterclaims, except for infringement of the '134 patent, were abandoned at trial because no evidence was presented on them. This finding is not clearly erroneous. The district court's dismissal of these patent infringement counterclaims was therefore proper.[5]
 
 
 65
 We have already held that the district court properly concluded that the '134 patent was invalid. It therefore follows that the district court was correct in finding no infringement of the '134 patent.
 
 
 66
 C. Rodstein and Rodac's Trademark Infringement and Unfair Competition Counterclaims
 
 
 67
 The district court dismissed these counterclaims along with the patent infringement counterclaims discussed above. The only evidence on these counterclaims consisted of Rodstein's affidavits and deposition testimony presented prior to trial in support of Rodstein and Rodac's motion for a preliminary injunction. Although this preliminary injunction was granted, the district court, after trial, found that Rodstein's statements on these issues were false. No further evidence on these counterclaims was presented by Rodstein and Rodac at trial.[6] In dismissing these counterclaims, the district court stated that "Rodstein and Rodac failed to present any evidence on any of these counterclaims except for infringement of the '134 patent." Rodstein and Rodac contend that this is clearly erroneous because "undisputed evidence" in the form of Rodstein's affidavits and deposition testimony remained before the court. In light of the court's finding that Rodstein's statements were false, we construe its use of the phrase "failed to present any evidence" to mean "failed to present any credible evidence," or at the very least "failed to produce evidence sufficient to establish a prima facie case." This conclusion is amply supported by the findings which are not clearly erroneous. We therefore affirm the district court's dismissal of these counterclaims.
 
 D. Malicious Prosecution
 
 68
 The district court found that because Rodstein and Rodac vigorously defended the main patent in the suit, the '134 patent, the fact that they abandoned most of their counterclaims and ultimately lost on the patent issues did not amount to proof of malicious prosecution. This finding is strongly supported in the record and is not clearly erroneous. We therefore affirm the district court's conclusion that Mayview failed to prove malicious prosecution.[7]
 
 IV. Attorney's Fees
 
 69
 Pursuant to 35 U.S.C. § 285[8] the district court awarded Mayview attorney's fees, finding that the case was "exceptional." This determination is within the discretion of the trial court and is not to be overturned unless it results from an abuse of this discretion or an erroneous conception of the law on the part of the trial judge. Maurice A. Garbell, Inc. v. Boeing Co., 546 F.2d 297, 300 (9th Cir. 1976), cert. denied, 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977); Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 880 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969).
 
 
 70
 "The trial court's discretion in awarding attorney's fees in patent cases may be invoked only upon a finding of bad faith or inequitable conduct on the part of the losing party which would make it grossly unjust for the prevailing party to be left with the burden of his litigation expenses." Maurice A. Garbell, Inc. v. Boeing Co., 546 F.2d at 300.
 
 
 71
 The court in Garbell upheld the district court's attorney's fees award because "Garbell had misled the patent office by suppressing relevant evidence of prior publications . . . (and) he did not make a reasonable assessment of the possibilities of infringement before bringing suit." Id.
 
 
 72
 The district court in the case before us found that Rodstein committed fraud on the Patent Office by: (1) failing to call the Cobra sander to the attention of the Patent Office while prosecuting the '134 patent application, (2) misrepresenting to the Patent Office that he had achieved balance between the piston and the shoe in the '134 patent, (3) misrepresenting the Viking sander's balance, (4) misrepresenting that he was the sole inventor of the '134 sander, and (5) failing to cite the Sumida prototype as prior art.
 
 
 73
 In addition, it found that Rodstein and Rodac committed fraud on the court by inducing it to grant a preliminary injunction on affidavits which contained misrepresentations.
 
 
 74
 On the basis of these frauds the district court held this case to be "exceptional" within the meaning of § 285.
 
 
 75
 Rodstein and Rodac challenge this conclusion as unsupported by the district court's findings. With respect to some of the frauds on the Patent Office, the findings state that Rodstein "knew or should have known" the pertinence of the prior art which he failed to disclose. And the findings relating to Rodstein's fraud on the court state that Rodstein "knew or should have known" that his representations in the affidavit were false.
 
 
 76
 This language, argue Rodstein and Rodac, describes simple negligence and cannot therefore support the district court's conclusions of fraud and, in turn, "exceptionalness."It is true that simple negligence does not constitute an "exceptional" case and therefore will not support an award of attorney's fees; however, conduct short of fraud and in excess of simple negligence will suffice. Maurice A. Garbell, Inc. v. Boeing Co., 546 F.2d at 300; Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 294 (9th Cir. 1969). The difficulty with Rodstein and Rodac's position is that although the phrase "knew or should have known" usually connotes negligence, its use in the district court's findings is ambiguous. And elsewhere are explicit findings[9] of Rodstein's intent to deceive. Thus, there is an apparent conflict in the findings with respect to Rodstein's state of mind.[10]
 
 
 77
 "Manifestly if an irreconcilable conflict exists between ultimate findings of material facts a judgment based upon such findings cannot stand." Freightways, Inc. v. Stafford, 217 F.2d 831, 835 (8th Cir. 1955); see Richmond Elks Hall Association v. Richmond Redevelopment Agency, 609 F.2d 383, 385 (9th Cir. 1979); Telex Corp. v. Balch, 382 F.2d 211, 215 (8th Cir. 1957); cf. Fed.R.Civ.P. 49(b) ("When the answers (to interrogatories accompanying a general verdict) are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial"). Contra, Landrum v. Taylor, 217 Kan. 113, 117, 535 P.2d 406, 410 (1975) ("Even if findings appear to be inconsistent, the decision of the trial court may be sustained on the basis of those findings which allow the conclusion reached by the court below, if they are supported by evidence"); 5 Am.Jur.2d Appeal and Error § 844 (1951).[11]
 
 
 78
 According to the Freightways definition, an irreconcilable conflict exists "(w)here the facts found will warrant a judgment either for the plaintiff or for the defendant, dependent upon which is accepted as controlling." 217 F.2d at 835. The district court's findings of intentionality and negligence present just such a conflict and its judgment with respect to these "frauds" therefore cannot stand.
 
 
 79
 With respect to at least two of Rodstein's misrepresentations to the Patent Office in procuring the '134 patent, concerning his sole inventorship and the balancing improvements, the district court made unequivocal findings of knowing intent. Although these frauds alone could constitute an "exceptional" case supporting the award of attorney's fees, see W. R. Grace & Co. v. Western U. S. Industries, Inc., 608 F.2d 1214, 1219 (9th Cir. 1979), the district court found this to be an "exceptional" case "particularly in view of the large number of different acts which Rodstein committed and which Rodstein knew or should have known to constitute fraud." (Emphasis added.) If on remand, the district court should determine that the acts in question were a result of simple negligence, which, as discussed previously, do not support an award of attorney's fees under the Garbell-Monolith standard, the district court might possibly decide that the misrepresentations of sole inventorship and balancing improvements alone do not reach the level of "exceptional" under § 285 and therefore refuse to award attorney's fees. This initial determination rests in the trial court's discretion. E. g., W. R. Grace & Co. v. Western U. S. Industries, Inc., 608 F.2d at 1219.
 
 
 80
 We therefore remand to the district court for clarification of its findings with respect to Rodstein's state of mind in making the misrepresentations to the Patent Office and to the court, and for a determination whether its clarified findings indicate that this is an "exceptional" case supporting an award of attorney's fees under § 285 in accordance with the Garbell-Monolith standard discussed above.[12]
 
 V. False Marking
 
 81
 The district court found Rodstein and Rodac's use of the '134 patent number on their sander units violative of the false marking statute, 35 U.S.C. § 292.[13]
 
 
 82
 Section 292 is penal in nature, see, e. g., Filmon Process Corp. v. Spell-Right Corp., 131 U.S.App.D.C. 374, 378, 404 F.2d 1351, 1355 (D.C.Cir. 1968); Lugash v. Santa Anita Manufacturing Corp., 254 F.Supp. 96, 101-02 (S.D.Cal.1965), rev'd on other grounds, 369 F.2d 964 (9th Cir. 1966), cert. denied, 389 U.S. 827, 88 S.Ct. 83, 19 L.Ed.2d 83 (1967), and must be strictly construed, see, e. g., Brose v. Sears, Roebuck & Co., 455 F.2d 763, 765 (5th Cir. 1972); Lugash v. Santa Anita Manufacturing Corp., 254 F.Supp. at 101-02.
 
 
 83
 When strictly construed, § 292 requires that four elements be established to sustain a finding of violation: (1) a marking importing that an object is patented (2) falsely affixed to (3) an unpatented article (4) with intent to deceive the public. See Brose v. Sears, Roebuck & Co., 455 F.2d at 765.
 
 
 84
 The district court's findings, which are not clearly erroneous, satisfy the first three of these requirements, but with respect to the state-of-mind element, the findings contain the "knew or should have known" terminology used in the findings of fraud previously discussed. And although there is no express conflicting finding of intent to deceive the public, the incidents referred to in some of the "fraud" findings are the same incidents that are relevant here. The state-of-mind finding with respect to false marking logically should be consonant with the "fraud" findings.
 
 
 85
 We therefore remand for clarification of the finding on Rodstein and Rodac's state of mind in using the '134 patent number on their sander units, noting that an actual intent to deceive the public is required for a violation of 35 U.S.C. § 292. 455 F.2d at 768-69 & n.8.
 
 VI. Conclusion
 
 86
 This complex, highly technical case is just the type for which the district court's practice of adopting findings and conclusions prepared by counsel for the victorious party is permissible. Yet it also is a clear example of the difficulties this practice presents on appeal findings and conclusions whose language is unclear, ambiguous, and at times internally inconsistent. When this practice is adopted, special care must be taken by the district court to ensure that the language employed in the findings and conclusions accurately reflects the district court's considered judgment.
 
 
 87
 AFFIRMED in part; VACATED and REMANDED in part for clarification of the district court's findings.
 
 
 88
 J. BLAINE ANDERSON, Circuit Judge, concurring and dissenting:
 
 
 89
 I concur almost entirely in Judge Choy's careful and exhaustive opinion. My reading of the record, the applicable statute and our case law convinces me, however, that a dissent is required with respect to the remand to the district court under Part IV, Attorney's Fees.
 
 
 90
 It is my view that the explicit findings of Rodstein's intent to deceive, on the two occasions where the qualification "or should have known" do not appear, are sufficient in themselves to justify a finding and conclusion that this is an "exceptional" case and that there was no abuse of discretion.
 
 
 91
 Furthermore, considering Rodstein's knowledge and asserted expertise in the field, his active participation in the patenting process, the obvious intended effect of his various statements, and the several specific unqualified findings of deceit, I am persuaded that the "or should have known" language may and should be fairly read to mean that the district court found that Rodstein deliberately or recklessly ignored the obvious with the intent that his statements would be relied upon by the Patent Office and the trial court. It seems to me there is a direct implication of a conscious concealment of material facts perhaps better characterized as "unclean hands," "calculated recklessness," or "bad faith" under W. R. Grace & Co. v. Western U. S. Industries, 608 F.2d 1214, 1217, 1218 (9th Cir. 1979).
 
 
 92
 I am satisfied that there is no irreconcilable conflict, no abuse of discretion, and no misapplication of the law by the district court on this issue.
 
 
 
 [1]
 This court rejected an earlier appeal from the district court's judgment in this case as premature because no separate judgment appeared in the record. Mayview v. Rodstein, Nos. 75-2765, 75-2486 (9th Cir. July 13, 1977) (order dismissing appeal for lack of jurisdiction). The district court then entered the final judgment from which this appeal was taken
 
 
 [2]
 The district court also found that Rodstein and Rodac had perpetrated several frauds on the Patent Office in securing the '134 patent. While fraud on the Patent Office in the prosecution of a patent is relevant in determining the validity of the patent, e. g., Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 294 (9th Cir. 1969), the trial court in this case did not base its conclusion of invalidity on its findings of fraud. Concluding as we do that the district court did not err in holding the '134 patent invalid on the ground that the applicant was not, as he swore in the application, the sole inventor, we do not reach this issue
 
 
 [3]
 Under such circumstances, the district court might have abused its discretion had it granted the motions. Cf. Atchison, Topeka & Santa Fe Ry. v. Barrett, 246 F.2d 846, 849 (9th Cir. 1957) (to support a Rule 60 motion for relief of judgment, fraud must be proved by clear and convincing evidence and must have been such as to prevent the losing party from fully or fairly presenting his case or defense)
 
 
 [4]
 Rodstein and Rodac argue that the district court clearly erred in finding that the Hutchins 900 sander was in existence and known to Rodstein at the time he "conceived" the '793 design. Rodstein testified at trial that he knew of the Hutchins 900 at the time he came up with the '793 design. After trial, he submitted an affidavit asserting that his trial testimony was incorrect and that the Hutchins 900 did not exist at the time he created the '793 design. Thus, the district court was faced with conflicting evidence in the form of Rodstein's inconsistent statements. We cannot fault the court for accepting Rodstein's trial testimony as accurate, rather than relying on his subsequent statement
 Because we conclude that the '793 patent is invalid for obviousness, we need not consider whether it was also invalid for anticipation as the district court held.
 
 
 [5]
 Rodstein and Rodac's contention that they were somehow induced by the district court to surrender their counterclaims in order to speed up the trial is specious. A review of the pertinent colloquy reveals that Rodstein and Rodac simply rested their case without having presented any evidence on these counterclaims. When Mayview's counsel and the court inquired about Rodstein and Rodac's position on these issues, their counsel spontaneously offered the judicial-economy explanation as their reason for not presenting any evidence. The court merely acquiesced in this "trial strategy" and did not in any way coerce it
 
 
 [6]
 See note 5 supra
 
 
 [7]
 Mayview's malicious prosecution claim, being an ancillary state claim, is, of course, governed by state substantive law. California requires three elements to state a prima facie malicious prosecution claim: (1) the prior civil action or proceeding was terminated in favor of the party now asserting the malicious prosecution claim; (2) the defendant in the malicious prosecution action did not have a reasonable belief that his original suit would be successful; and (3) the defendant brought his original suit with malice. 4 B. Witkin, Summary of California Law, Torts §§ 257-261 (1974); Babb v. Superior Court, 3 Cal.3d 841, 847, 92 Cal.Rptr. 179, 182, 479 P.2d 379, 382 (1971); Berson v. Ewing, 84 Cal. 89, 23 P. 1112 (1890). The California Supreme Court has construed the first requirement as precluding a party from cross-complaining or counterclaiming for malicious prosecution in the first or main action, as Mayview has done here, because a cause of action cannot be stated at that stage of the proceeding, there being no prior proceeding. Babb v. Superior Court, 3 Cal.3d at 846, 92 Cal.Rptr. at 181, 479 P.2d at 381
 Because we hold that the district court was correct in concluding that Mayview failed to prove its claim, we need not decide whether the Babb construction of the "prior proceeding" element is merely procedural or substantive and therefore controlling in the federal courts.
 
 
 [8]
 "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285
 
 
 [9]
 Although some of these findings are set forth under the caption "Conclusions of Law," they nonetheless constitute findings of fact and may be treated as such. E. g., Elmore v. United States, 404 F.2d 56, 57 n.* (6th Cir. 1968); see Ohlinger v. United States, 219 F.2d 310, 311 & n.2 (9th Cir. 1955)
 
 
 [10]
 Even though, as noted earlier, these findings were actually authored by counsel for Mayview, they are as much the court's findings as if the judge had prepared them himself. Glens Falls Ins. Co. v. Satree, 320 F.2d 92, 95 n.6 (9th Cir. 1963). It seems that this conflict in the findings may have been derived from the district court's own earlier memorandum decision. In its discussion of one of the "particularly flagrant abuses of the patent process," the district court stated in its memorandum decision:
 The failure of Rodstein to cite the Cobra (sander as prior art) can only be construed as an intent to deceive or at most (sic ) a reckless disregard of the consequences since the '134 patent would not have issued if the Patent Office knew of the Cobra. The failure of Rodstein to call to the attention of the Patent Office significant prior art which was known and which he should have known would affect patentability of the '134 patent constitutes a fraud on the Patent Office.
 (Emphasis added.) Although the phrase "known and should have known" is somewhat abstruse it most likely was used to mean that the significant prior art was known by Rodstein, and that he should have known it would affect patentability.
 It is not unlikely that Mayview's counsel, instructed to submit proposed findings consistent with this memorandum decision, misconstrued this passage as a finding of negligence and carried it over into the findings by using the phrase "known or should have known" classic negligence terminology. Thus, it is arguable that the memorandum decision, from which the findings were derived, does not contain a finding of negligence and is therefore not inconsistent with the district court's judgment. When the district court does enter formal findings, however, "we are not at liberty to refer to the opinion for the purpose of eking out, controlling or modifying the scope of the findings." Stone v. United States, 164 U.S. 380, 383, 17 S.Ct. 71, 41 L.Ed. 477 (1896), quoted in Ohlinger v. United States, 219 F.2d 310, 311 (9th Cir. 1955). This therefore is not a case "where a complete understanding of the issues may be had by the appellate court without the necessity of (remanding for) separate findings." Richmond Elks Hall Ass'n v. Richmond Redev. Agency, 609 F.2d 383, 385 (9th Cir. 1979). "(T)he usual course in cases where the findings of fact and conclusions of law do not support the judgment entered is to vacate and remand for further findings . . . ." Id.
 
 
 [11]
 The Landrum v. Taylor -Am.Jur.2d approach apparently has never been followed in the federal courts
 
 
 [12]
 Both parties, on appeal, attack the amount of the attorney's fee award, Mayview contending that $90,850 is inadequate, Rodstein and Rodac contending that it is excessive. Because we remand the question of attorney's fees we do not reach the sufficiency-excessiveness question. We do note, however, that the amount of an attorney's fee award is within the trial court's discretion and will be overturned only if unreasonable. Maurice A. Garbell, Inc. v. Boeing Co., 546 F.2d at 301
 
 
 [13]
 "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public . . . (s) hall be fined not more than $500 for every such offense." 35 U.S.C. § 292(a)